Moncure, P.
delivered the opinion of the court:
The court is of opinion, that under the will of Caleb-Stone, which was recorded in 1810, his daughter Sally, who died without ever having married or had any children, was entitled only to a life estate in the land and slave and future increase of the slave loaned toiler by the 10th and 11th clauses of the will.
The 10th clause must be read thus: “ 10th. I lend to my daughter Sally, 140 acres of land to be possessed *327 by her during ber natural life and the natural life or widowerhood of any husband she may have; and at her death and the death or after marriage of her husband, then to be equally divided among her children, if she has any, and if she has none then to be divided among all my children.”
By the 11th clause the slave Phoebe and her future increase are loaned to the said Sally, on the same terms and conditions with the land.
If Sally Stone had left a husband her estate would have been enlarged and extended to the death or after marriage of her husband, when it would have determined. In other words she was entitled under the will to a vested estate for her life, and to a contingent estate in remainder at and from the period of her death until the death or after marriage of any husband she might have who should survive her. But as she had no husband, the contingency never happened and her estate therefore ended at her death.
The language of the will is very plain, and to a mind unaccustomed to legal technicalities and difficulties, it would seem to be strange that there could be any doubt about the meaning of the testator. The difficulty arises from the word “ children,” which is twice used in the 10th clause. And the question is asked, could the testator have intended, to give the property over only to children, to the exclusion of the descendants of any deceased child or children ? Prom the improbability of such an intention it is argued that he must have used the word “ children” as a word of limitation and not of purchase, and that the 10th clause must be construed as if it had been a gift to Sally Stone and the heirs of her body; which would have created an estate tail in the realty, which the statute would have converted into an estate in fee simple, and an absolute estate in the personalty.
blow it is very probable that if the testator had been *328 asked when lie gave instructions for his will, whether he intended by the use of the word “children” to exclude the descendants which might be living of any child that might be dead, supposing the will to have that effect, he would have answered “Ho,” and would have directed such words to be used as would plainly express his intention. But whatever may be our • conjecture on that subject, we cannot give effect to any supposed intention which is not expressed by the words of the will. The most we could say in such a case is, Voluit, sed non dixit. We sit here not to make wills for testators but to expound them. And we must give effect to every will as it is written by the testator, provided it be legal, however strange and capricious it may seem to have been.
Here is an express loan to his daughter Sally during her natural life. This is plain language, and standing by itself it cannot be misunderstood. What is there in the will to change its natural meaning ? Only the word “ children,” which twice follows it in the same clause. How this word children is just as plain as the loan for life previously given. Its meaning is, issue in the first degree, and it can generally have no other meaning unless there be other words in the will to give it such other meaning, except the rule in Wild’s case applies, which is founded on peculiar reasons. A testator may use words in any sense he pleases, however different that- sense may be from their natural meaning; and therefore he may use the word “ children” to embrace grandchildren, or other descendants, or issue indefinitely; but then it must appear from his will, at least generally, that such was his intention. We say generally because there may be cases in which the word “ children” in a will would be construed to mean “grandchildren,” although there might be nothing in the will to show such a meaning; as when the gift is to children, and the proof de hors the will, is that *329 the testator had not, and in the nature of things could not have, children, hut had grandchildren; then the grandchildren would take under the will ut res valeat quean pereat; and so in the like cases. But this is not such a case. There is nothing in the will nor de hors the will in this case, to change the natural and ordinary meaning of the words used, and we must therefore give effect to them according to that meaning.
We therefore think that the word children in this will is a word of purchase and not of limitation, whether the devise over to children he void for remoteness or not; from which it follows that the estate expressly limited to the testator’s daughter Sally during her natural life, &c., in the former part of the 10th clause, is not enlarged into an estate in tail in the land, nor into an absolute estate in the slave and her increase, by the word “children” in the latter part of the clause.
It is sufficient and only proper for us to decide in this case that Sally Stone had only a life estate in the property aforesaid, without deciding who were entitled to it at her death. We therefore do not intend to decide the latter question. The solution of that question belongs to the court in the suits which it appears are depending for the division of the land and slaves, or distribution of the proceeds of the sale thereof, among the persons entitled thereto. To those suits the appellants can be made parties, if they claim to be entitled to participate in such division or distribution.
The view we have taken of this case renders it unnecessary for us to examine the many authorities referred to by the learned counsel who argued it. But wishing the profession to have the benefit of their arguments, which displayed extraordinary legal research, we request the reporter to publish full notes of them in his report of this case.
It follows, from what we have said, that the decree *330 of the Circuit court must be affirmed; but without prejudice to any interest which the said Sally Stone, or her representatives, may have in the said property, or any part thereof, otherwise than under the loan to her as aforesaid.
The decree was as follows :
That Sally Stone was entitled only to an estate for her life in the land and slave Phoebe and her increase under the loan made to her by the tenth and eleventh clauses of the will of her father Caleb Stone, and that there is no error in the said decree. Therefore, without expressing any opinion on the question as to what persons were entitled to the said property at her death, and without prejudice to any interest which she or her representatives may have in the said property or any part thereof otherwise than under the loan to her as aforesaid, or to any claim which the said representatives or the appellants may assert to any such interest by becoming parties to the suit instituted and still pending, as appears from the bill, for the sale of the said property and distribution of the proceeds, or otherwise, it is decreed and ordered that the said decree be affirmed, and that the appellants do pay unto the appellees thirty dollars damages, and also their costs by them about their defence in this behalf expended.
Decree arrirmed.